# UNITED STATES DISTRICT COURT
# NORTHERN DISTRICT OF GEORGIA
# ATLANTA DIVISION

| | |
|---|---|
| In re: EBIX INC. SECURITIES LITIGATION | Master File No. 1:11-CV-02400-RWS |

## PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT OF UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT, PRELIMINARY CERTIFICATION OF SETTLEMENT CLASS, APPROVAL OF CLASS NOTICE, AND SCHEDULING OF A FINAL APPROVAL HEARING

# TABLE OF CONTENTS

I.  INTRODUCTION ........................................................................2

II.  FACTUAL AND PROCEDURAL BACKGROUND .....................................3

    A.  Description Of The Action ..................................................3

    B.  The Proposed Settlement ...................................................6

III.  THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL.7

    A.  The Proposed Settlement Is The Result Of Good Faith Negotiations, And Has No Obvious Deficiencies .......................................9

    B.  The Proposed Settlement Is Within The Range Of Reasonableness ......10

IV.  THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS ...................................................................12

    A.  The Proposed Settlement Class Meets The Requirements Of Rule 23(a) ....................................................................13

        1.  The Settlement Class Is Sufficiently Numerous ...........................13

        2.  There Are Common Questions of Law and Fact ...........................14

        3.  The Proposed Class Representative's Claims Are Typical ..........15

        4.  The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class.............................17

    B.  The Proposed Settlement Class Satisfies Rule 23(b)(3) .........................18

        1.  Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class.....................19

        2.  A Class Action Is Superior to Other Methods of Adjudication....20

    C.  The Court Should Appoint Counsel As Class And Liaison Counsel .....21

i

V.   THE PROPOSED NOTICE PLAN AND FORMS OF NOTICE SHOULD BE
       APPROVED ...................................................................................................22

VI.   PROPOSED SCHEDULE ...............................................................................23

VII.   CONCLUSION..................................................................................................24

CERTIFICATE OF SERVICE AND TYPE .........................................................26

# TABLE OF AUTHORITIES

**Cases**                                                                 **Page(s)**

*Amchem Prods. v. Windsor*,
  521 U.S. 591 (1997)................................................................19, 20

*Borcea v. Carnival Corp.*,
  238 F.R.D. 664 (S.D. Fl. 2006) ........................................................13

*Canupp v. Liberty Behavioral Health Corp.*,
  417 Fed. App'x 843 (11th Cir. 2011) ...................................................9

*In re Checking Account Overdraft Litig.*,
  275 F.R.D. 654 (S.D. Fla. 2011)..............................................9, 13, 23

*In re Checking Account, Overdraft Litig.*,
  No. 1:09-MD-02036-JLK,
  2012 U.S. Dist. LEXIS 138626 (S.D. Fla. Sept. 19, 2012) ..................8

*Cooper v. S. Co.*,
  390 F.3d 695 (11th Cir. 2004) ........................................................16

*Cox v. Am. Cast Iron Pipe Co.*,
  784 F.2d 1546 (11th Cir. 1986) ........................................................14

*In re Domestic Air Transp. Antitrust Litig.*,
  148 F.R.D. 534 (N.D. Ga. 1992)...............................................10, 23

*Fresco v. Auto Data Direct, Inc.*,
  No. 03-61063,
  2007 U.S. Dist. LEXIS 37863 (S.D. Fla. May 11, 2007)................8, 9

*Kirkpatrick v. J.C. Bradford & Co.*,
  827 F.2d 718 (11th Cir. 1987) ...............................................17, 18, 21

*Mashburn v. Nat'l Healthcare, Inc.*,
  684 F. Supp. 660 (M.D. Ala. 1988)....................................................8

*In re Merrill Lynch Tyco Research Sec. Litig.*,
  249 F.R.D. 124 (S.D.N.Y. 2008) ........................................................................11

*In re Netbank, Inc. Sec. Litig.*,
  259 F.R.D. 656 (N.D. Ga. 2009) ...................................................14, 16, 17, 19

*Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*,
  601 F.3d 1159 (11th Cir. 2010) .........................................................................20

*In re Scientific-Atlanta, Inc. Sec. Litig.*,
  571 F. Supp. 2d 1315 (N.D. Ga. 2007)...........................................13, 14, 15, 20

*Smith v. Wm. Wrigley Jr. Co.*,
  No. 09-60646,
  2010 U.S. Dist. LEXIS 67832 (S.D. Fla. June 15, 2010)....................................8

*Strube v. Am. Equity Inv. Life Ins. Co.*,
  226 F.R.D. 688 (M.D. Fla. 2005) .................................................................11, 16

*In re Theragenics Corp. Sec. Litig.*,
  205 F.R.D. 687 (N.D. Ga. 2007) .................................................................17, 18

*In re U. S. Oil & Gas Litig.*,
  967 F.2d 489 (11th Cir. 1992) .............................................................................8

*Valley Drug Co. v. Geneva Pharm., Inc.*,
  350 F.3d 1181 (11th Cir. 2003) .....................................................................13, 17

*Williams v. Mohawk Indus., Inc.*,
  568 F.3d 1350 (11th Cir. 2009) .............................................................14, 15, 16

## Statutes

15 U.S.C. §78u-4(a)(7) ...........................................................................................22

## Other Authorities

Fed. R. Civ. P. 23 .............................................................................................*passim*

4 Newberg on Class Actions § 11.26 (4th ed. 2010) ...............................................8

Court-appointed Lead Plaintiff, Dan Anghel ("Plaintiff" or "Anghel"), on behalf of himself and the putative Class (defined below) have reached a proposed settlement of this securities class action lawsuit (the "Action") for a total of $6,500,000 in cash that, if approved, will resolve all claims in the Action (the "Settlement").[1] Plaintiff respectfully submits this memorandum of law in support of his motion and requests that this Court enter the proposed Order Preliminarily Approving Proposed Settlement and Providing for Notice ("Preliminary Approval Order"), a copy of which is attached as Exhibit A to the accompanying Notice of Motion. The Preliminary Approval Order will, among other things: (i) preliminarily approve the Settlement on the terms set forth in the Stipulation; (ii) certify the Class, as defined below, for settlement purposes; (iii) approve the form and manner of giving notice of the Settlement to the Class; and (iv) set a date for the Settlement Hearing at which the Court will consider final approval of the Settlement, Plan of Allocation for distribution of the Net Settlement Fund, and Lead Counsel's application for attorneys' fees and expenses, and payment of Lead Plaintiff's incentive award.

---

[1] All capitalized terms that are not otherwise defined herein shall have the meanings provided in the Stipulation of Settlement dated as of January 24, 2014 (the "Stipulation"), filed concurrently herewith as Exhibit 1.

## I.      INTRODUCTION

Subject to Court approval, Plaintiff, on behalf of himself and the Class, has agreed to settle all claims asserted in the Action against the Defendants,[2] in exchange for $6,500,000 in cash to be deposited into an interest-bearing escrow account. As set forth in the Stipulation, the Settlement, if approved, will resolve all claims against all Defendants and their related parties. Plaintiff's principal reason for entering into the Settlement is the immediate cash benefit provided for the Class considered against the significant risk a smaller recovery – or, indeed, no recovery – might be achieved after a trial, and the likely appeals that would follow trial, which could take many months, or even years.

During the course of the Action, Plaintiff, through Lead Counsel, *inter alia*: (i) conducted extensive investigation of the Class' claims; (ii) drafted a detailed Consolidated Amended Complaint; (iii) successfully opposed Defendants' motions to dismiss; (iv) conducted documentary discovery; (v) briefed a motion for class certification; (vi) fully briefed Defendants' motion for judgment on the pleadings, pending at the time of Settlement; (vii) consulted with accounting and damages experts; and (viii) engaged in multiple in-person and telephonic meetings regarding a possible settlement of the Action before reaching an agreement in principle to settle.  As a result,

---

[2] The "Defendants" are Ebix, Inc. ("Ebix"), Robin Raina, and Robert Kerris.

Plaintiff and Lead Counsel had a thorough understanding of the relative strengths and weaknesses of the claims at the time the Settlement was reached.

Plaintiff has closely monitored and participated in this Action from the outset, was aware of, participated in and approved the settlement negotiations, and recommends that the Settlement be approved. Further, Lead Counsel, who have extensive experience in prosecuting securities class actions, strongly believe that the Settlement is in the best interests of the Class.

At the final approval hearing (the "Settlement Hearing"), more extensive motion papers will be submitted in support of the Settlement, and the court will be asked to make a determination as to whether the Settlement is fair, reasonable, and adequate under all of the circumstances surrounding the Action. At this juncture, Plaintiff requests only that the Court grant preliminary approval of the Settlement so that Notice of the Settlement may be disseminated to the Class and the Settlement Hearing may be scheduled.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

### A.    Description Of The Action

Between July 14, 2011 and July 21, 2011, two securities class action complaints were filed against the Defendants:  *Anghel v. Ebix, Inc., et al.*, No. 1:11-CV-02400-RWS filed before this Court; and *James Matessino v. Ebix, Inc., et al.*, No. 1:11-CV-04864-JSR, filed before the United States District Court for the

3

Southern District of New York, but transferred to this Court as No. 1:11-CV-03269-RWS on September 19, 2011.  Thereafter, this Court consolidated the two actions as *In re: Ebix, Inc. Securities Litigation*, No. 1:11-CV-002400 (the "Action").  On October 14, 2011, the Court appointed Anghel as Lead Plaintiff, appointed Faruqi & Faruqi, LLP as Lead Counsel ("Lead Counsel" or "Faruqi"), and Holzer, Holzer & Fistel, LLC, now known as Holzer & Holzer, LLC, as Liaison Counsel ("Liaison Counsel" or "Holzer").

On November 28, 2011 Plaintiff filed a 152-page, 277-paragraph Consolidated Amended Complaint (the "CAC"), *see* ECF No. 22, detailing his claims against Defendants and the factual basis for those claims.  The CAC brought claims against Defendants under §§ 10(b) and 20(a) of the Securities Exchange Act of 1934 ("Exchange Act"), 15 U.S.C. §§ 78j(b) and 78t(a), and Securities and Exchange Commission Rule 10b-5, 17 C.F.R. § 240.10b-5.

Specifically, the CAC alleges that during the Class Period, Defendants conducted three underlying fraudulent schemes.  First, Plaintiff alleges that Defendants falsely claimed that Ebix operated with adequate internal controls, when in fact it was unable to maintain accurate accounts receivables or accrue for losses from uncollectible receivables.  CAC at ¶¶ 33-86.  Second, Plaintiff alleges that Defendants materially misrepresented the organic growth rates for the many acquisitions that Ebix made during the Class Period, an important metric for

investors.  *Id.* at ¶¶ 106-124.  Finally, Plaintiff alleges that Defendants engaged in an improper and potentially illegal tax avoidance scheme, materially misrepresenting the Company's ability to employ a foreign tax strategy to limit the Company's tax liability to less than 10%.  *Id.* at ¶¶ 87-105.  Defendants have denied, and continue to deny, each of the claims alleged by Plaintiff in the Action.

Defendants moved to dismiss the CAC on January 12, 2012, which this Court denied on September 28, 2012.  *See* ECF No. 38.

Beginning on November 19, 2012, Plaintiff began document discovery pursuant to which Lead Counsel received and reviewed approximately four thousand documents from Defendants, and thousands of documents from nonparties, including Ebix's current and former auditors.

On December 7, 2012, Plaintiff filed a Motion for Class Certification, which was fully briefed by the Parties.  Prior to the Court's ruling on Plaintiff's Motion for Class Certification, Defendants filed a Motion for Judgment on the Pleadings, arguing that the two corrective disclosures cited by Plaintiff in the CAC – a March 24, 2011 report by Copperfield Research (the "Copperfield Report"), and a June 30, 2011 *Bloomberg* news article (the "*Bloomberg* Article") – are insufficient to support a finding of loss causation under Eleventh Circuit precedent.  On July 2, 2013, the Court denied Plaintiff's Motion for Class Certification without prejudice to refiling the Motion for Class Certification should the Court deny Defendants'

5

Motion for Judgment on the Pleadings.  On July 16, 2013, the Court entered a stipulated Order staying discovery pending a ruling on Defendants' Motion.

      While Defendants' Motion for Judgment on the Pleadings was pending, Plaintiff and Defendants engaged in arms-length negotiations in an attempt to settle the Action.  Following several weeks of discussions, the Parties agreed in principle to the Settlement, then worked over the subsequent months to finalize the terms of the Settlement, which are reflected in the Stipulation.

### B.    The Proposed Settlement

      The Settlement provides that the Defendants will pay the amount of $6.5 million to settle all claims in the Action.  The Settlement Amount will be placed into an interest-bearing escrow account and, after paying expenses of administration, attorney fees and expenses approved by the Court, and other costs of settlement, the Net Settlement Amount will be distributed to Authorized Claimants.  In exchange for the payment of the Settlement Amount, Plaintiff and the Settlement Class will release all Released Claims against the Released Persons.

      Plaintiff entered into this Settlement with a full and comprehensive understanding of the strengths and weaknesses of the claims in the CAC, which are based on Lead Counsel's extensive experience with securities litigation, the investigation performed in connection with the filing of the initial complaint in the Anghel action and the CAC, the legal research performed in conjunction with the

extensive briefing in the Action, and the review of discovery from Defendants and third parties.  Plaintiff believes that the claims asserted in this Action have merit and that the evidence developed to date supports the claims.  Plaintiff and Lead Counsel recognize and acknowledge, however, the expense and length of continued proceedings necessary to prosecute the Action through trial and possible appeals, as well as the uncertain outcome and the risk of any litigation, especially in complex actions such as this Action.  Plaintiff and Lead Counsel also are mindful of the inherent problems of proof under and possible defenses to the federal securities law violations asserted in the Action.  Plaintiff and Lead Counsel believe that the Settlement set forth in the Stipulation confers substantial benefits upon, and is in the best interests of, the Settlement Class.

## III.   THE PROPOSED SETTLEMENT MERITS PRELIMINARY APPROVAL

Federal Rule of Civil Procedure 23(e) provides that any compromise of a class action must receive court approval.  In determining whether to preliminarily approve the Settlement, the Court should be guided by the "[p]ublic policy that strongly favors the pretrial settlement of class action lawsuits," *In re U. S. Oil & Gas Litig.*, 967 F.2d 489, 493 (11th Cir. 1992), particularly in class actions alleging securities fraud.  *See Mashburn v. Nat'l*

*Healthcare, Inc.*, 684 F. Supp. 660, 667 (M.D. Ala. 1988) ("[S]ecurities fraud class actions readily lend themselves to settlement.").

While Rule 23 does not specifically delineate a procedure for approval of a class action settlement, courts have taken a two-step approach, including "preliminary approval and a subsequent fairness hearing." *Smith v. Wm. Wrigley Jr. Co.*, No. 09-60646, 2010 U.S. Dist. LEXIS 67832, at *5 (S.D. Fla. June 15, 2010) (internal citations omitted). At the preliminary approval stage, the Court's task is to evaluate whether the Settlement is within the "range of reasonableness." *In re Checking Account, Overdraft Litig.*, No. 1:09-MD-02036-JLK, 2012 U.S. Dist. LEXIS 138626, at *47-48 (S.D. Fla. Sept. 19, 2012) (quoting 4 Newberg on Class Actions § 11.26 (4th ed. 2010)). Courts have explained that "[p]reliminary approval is appropriate where the proposed settlement is the result of the parties' good faith negotiations, there are no obvious deficiencies and the settlement falls within the range of reason." *Smith*, 2010 U.S. Dist. LEXIS 67832, at *7; *see also Fresco v. Auto Data Direct, Inc.*, No. 03-61063, 2007 U.S. Dist. LEXIS 37863, at *11-12 (S.D. Fla. May 11, 2007) ("A proposed settlement should be preliminarily approved if it is within the range of possible approval or, in other words, [if] there is probable cause to notify the class of the proposed settlement.") (internal citations omitted). The proposed Settlement should be preliminarily approved, as the Settlement has no obvious deficiencies and is well within a reasonable range.

8

### A.   The Proposed Settlement Is The Result Of Good Faith Negotiations, And Has No Obvious Deficiencies

The proposed Settlement between Plaintiff and Defendants in this case was reached only after arms-length negotiations between experienced counsel.  Indeed, in assessing whether or not to approve a proposed settlement under Rule 23, courts give considerable weight to the opinion of experienced and informed counsel.  *See, e.g.*, *In re Checking Account Overdraft Litig.*, 275 F.R.D. 654, 661-62 (S.D. Fla. 2011) ("Settlement negotiations that involve arm's length, informed bargaining with the aid of experienced counsel support a preliminary finding of fairness."); *see also Canupp v. Liberty Behavioral Health Corp.*, 417 Fed. App'x 843, 845 (11th Cir. 2011) ("[T]he court was entitled to rely upon the judgment of experienced counsel for the parties. Indeed, absent fraud, collusion, or the like, a district court should be hesitant to substitute its own judgment for that of counsel.").

Lead Counsel has extensive experience prosecuting securities class actions. *See* Motion to Appoint Lead Counsel, ECF No. 10.  As stated above, the proposed Settlement was the result of several weeks of negotiations between Lead Counsel and counsel for Defendants.  Counsel for the Parties then spent additional months negotiating the terms of the Stipulation.  Moreover, the Settlement was reached only after considerable investigation and analysis of the facts and law supporting

the merits of the claims against Defendants as well as the defenses available to them.  Accordingly, Lead Counsel was well-informed as to the strengths and weaknesses of Plaintiff's claims, and the Settlement is deserving of preliminary approval.  Thus, the Settlement has no obvious deficiencies.

**B.      The Proposed Settlement Is Within The Range Of Reasonableness**

The benefit of the present proposed Settlement must be compared to the risk that no recovery or a lesser recovery might be achieved in the future.[3]  The proposed Settlement creates a settlement fund of $6.5 million in cash. This recovery provides an immediate benefit to the Class, especially in light of the significant obstacles Plaintiff faced to obtaining relief in this case.   Indeed, Defendants' pending Motion for Judgment on the Pleadings could eliminate any possibility of recovery whatsoever.  Moreover, if the Court were to grant the Motion with respect to the Copperfield Report but retain Plaintiff's claim as it relates to the *Bloomberg* Article, the damages available to the class would be substantially reduced.  In light of these risks, a Settlement Amount of $6.5 million is well within a range of reasonableness.[4]

---

[3] The Court must consider "the likelihood and extent of any recovery from the defendants absent settlement." *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 534, 314 (N.D. Ga. 1992).

[4] Courts have recognized that recoveries of 2%-3% fall within the range of reasonableness for ***final*** approval.  *See, e.g., Strube v. Am. Equity Inv. Life Ins. Co.*,

Plaintiff continues to believe that the claims asserted in the CAC are meritorious and that the evidence developed to date supports those claims. However, Plaintiff also acknowledges that continuing the Action poses significant risks. First, Plaintiff acknowledges that notwithstanding Plaintiff's ability to develop factual support for his claims through discovery, there is a significant risk that the Court could rule in Defendants' favor on Defendants' dispositive Motion for Judgment on the Pleadings, either dismissing Plaintiff's claims outright or severely truncating the Class Period (dramatically limiting the potential recovery to the Class). Second, Plaintiff acknowledges that even if his claims survive the Motion for Judgment on the Pleadings, Defendants would likely seek dismissal through one or more motions for summary judgment.

In addition, Plaintiff faces the risk he would fail to prove his claims at trial. Indeed, Defendants have denied and continue to deny, *inter alia*, the allegations that they made any materially false statements or had any intent to make any, that Plaintiff or Class members have suffered damages, that the price of Ebix's stock

---

226 F.R.D. 688, 695 (M.D. Fla. 2005) (approving settlement equal to 2% of estimated potential recovery); *In re Merrill Lynch Tyco Research Sec. Litig.*, 249 F.R.D. 124, 135 (S.D.N.Y. 2008) (approving $4.9 million settlement—3% of estimated damages—and noting that the estimated recovery "does not meaningfully diverge from the range of reasonableness for settlements of similar-sized securities class actions"). Plaintiff's Motion for Final Approval will demonstrate that the recovery in this Action far exceeds the 2%-3% threshold approved by other courts on final approval.

11

was artificially inflated by reasons of alleged misrepresentations, non-disclosures, or otherwise, or that Plaintiff or Class members were harmed by the conduct that was or could have been alleged in the Action.

Given the risks to both Parties of continued litigation, the proposed Settlement, as set forth in the Stipulation, is well within the range of reasonableness and should be preliminarily approved.

## IV.   THE COURT SHOULD PRELIMINARILY CERTIFY THE SETTLEMENT CLASS

Plaintiff seeks certification of the following Settlement Class:

> All Persons who purchased or otherwise acquired Ebix common stock between May 6, 2009 and June 30, 2011, inclusive.  Excluded from the Class are Ebix, Robin Raina, and Robert Kerris, their families, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors, or assigns and any entity in which Defendants have or had a controlling interest.

*See* Stipulation, § 1.4.

It is well settled that a court may certify a class "solely for purposes of settlement where a settlement is reached before a litigated determination of the class certification issue."  *Borcea v. Carnival Corp.*, 238 F.R.D. 664, 671 (S.D. Fl. 2006); *see also In re Checking Account Overdraft*, 275 F.R.D. at 659.[5]  To certify a

---

[5] As stated above, while the Parties fully briefed the class certification issue in this case, the Court denied Plaintiff's Motion for Class Certification without prejudice

class for the purposes of settlement, a court must find that the proposed class satisfies the four prerequisites of Rule 23(a)—numerosity, commonality, typicality, and adequacy—as well as at least one subsection of Rule 23(b).  *In re Checking Account Overdraft*, 275 F.R.D. at 659.[6]  Because the requirements of Rule 23(a) and (b)(3) are satisfied, the Court should certify the proposed Settlement Class.

### A.    The Proposed Settlement Class Meets The Requirements Of Rule 23(a)

#### 1.    The Settlement Class Is Sufficiently Numerous

Rule 23(a) provides that a class may be certified if it is "so numerous that joinder of all members is impracticable."  Fed. R. Civ. P. 23(a)(1).  To demonstrate sufficient numerosity, Plaintiff must show only the extreme difficulty or inconvenience of joining all members of the class.  *See In re Scientific-Atlanta, Inc. Sec. Litig.*, 571 F. Supp. 2d 1315, 1324-25 (N.D. Ga. 2007).  This Court may also consider the size of the class, the ease of identifying addresses for Class members and their geographic dispersion.  *Id.*  In actions brought under §10(b) of the Exchange Act, numerosity is generally presumed when a claim involves securities traded on a national exchange.  *Id.* at 1325.

---

on July 2, 2013, in light of Defendants' pending Motion for Judgment on the Pleadings.  *See* ECF No. 65.

[6] A court may address the merits of the case only to the degree necessary to assess whether the proposed class satisfies the requirements of Rule 23.  *See Valley Drug Co. v. Geneva Pharm, Inc.*, 350 F.3d 1181, 1189 n.15 (11th Cir. 2003).

During the Class Period, Ebix securities traded on the NASDAQ Global Market exchange.  CAC at ¶ 10.  As of March 14, 2011, Ebix had 39,708,750 shares of common stock issued and outstanding, owned by hundreds if not thousands of persons.  *Id.* at ¶ 20.  As such, this Court should apply the numerosity presumption and find that the proposed Settlement Class satisfies the numerosity requirement of Rule 23(a)(1).  *See, e.g.*, *In re Netbank, Inc. Sec. Litig.*, 259 F.R.D. 656, 664 (N.D. Ga. 2009) (finding numerosity requirement satisfied where 46 million shares traded on NASDAQ).

### 2.     There Are Common Questions of Law and Fact

Rule 23(a)(2) requires the existence of "questions of law or fact common to the class."  Commonality "does not require that all the questions of law and fact raised by the dispute be common."  *Cox v. Am Cast Iron Pipe Co.*, 784 F.2d 1546, 1557 (11th Cir. 1986).  Rather, Rule 23(a)(2) requires that a class action involve issues that are susceptible to class-wide proof and involve at least one issue whose resolution affects all or most of the class members.  *See Williams v. Mohawk Indus., Inc.*, 568 F.3d 1350, 1355 (11th Cir. 2009).  In other words, Plaintiff must show that all members of the Class have similar claims.  *See Scientific-Atlanta*, 571 F. Supp. 2d at 1325.

In this case, the overarching issue shared by all members of the proposed Settlement Class is whether Defendants violated the Exchange Act and the rules

promulgated thereunder in connection with Plaintiff's factual allegations discussed above.  Specifically, common questions of law and fact in this case include: (a) whether Defendants violated the Exchange Act and the rules promulgated thereunder; (b) whether Defendants omitted and/or misrepresented material facts; (c) whether Defendants' statements omitted material facts necessary to make the statements made, in light of the circumstances under which they were made, not misleading; (d) whether Defendants knew or recklessly disregarded that their statements were false and misleading; (e) whether the price of Ebix common stock was artificially inflated; and (f) the extent of damage sustained by Class members and the appropriate measure of damages.  *See* CAC at ¶ 21.  These are all common questions because each Class member has to prove the same elements to establish the liability of Defendants, and thus suffice to satisfy the low hurdle of Rule 23(a)(2).  *Mohawk,* 568 F.3d at 1356.

### 3.    The Proposed Class Representative's Claims Are Typical

A class may be certified if the claims of the representative parties are typical of the claims of the class.  Fed. R. Civ. P. 23(a)(3).  A claim of a class representative is typical if it arises "from the same event or pattern or practice" and is "based on the same legal theory."  *Mohawk*, 568 F.3d at 1356-57 (holding district court abused its discretion in finding claims based on same legal theory were not typical).  To establish typicality, therefore, a nexus must exist "between

the class representative's claims or defenses and the common questions of fact or law which unite the class." *In re NetBank, Inc.*, 259 F.R.D. 656, 665 (N.D. Ga. 2009). Typicality, however, does not require "that all putative class members share identical claims, and . . . factual differences among the claims of the putative members do not defeat certification." *Cooper v. Southern Co.*, 390 F.3d 695, 714 (11th Cir. 2004) (internal citations and quotation marks omitted). The named representatives need only share the same "essential characteristics" of the larger class. *Id.* Thus, minor factual differences between the representatives and the rest of the class will not defeat typicality. *See Strube v. Am. Equity Inv. Life Ins. Co.*, 226 F.R.D. 688, 695 (M.D. Fla. 2005).

Plaintiff's claims arise from the same events and alleged misconduct, and are based on the same legal theories, as those of the proposed Settlement Class. Here, as in *Netbank*, Plaintiff claims: (a) that Defendants violated §§10(b) and 20(a) of the Exchange Act by issuing false and misleading statements; (b) that he and other Settlement Class members purchased Ebix stock at inflated prices based on those false and misleading statements and were damaged; and (c), by proving his own claims, Plaintiff would prove the claims of the absent Settlement Class members. Accordingly, there is a sufficient nexus between Plaintiff's claims and the claims asserted on behalf of the members of the Settlement Class. For these reasons, Rule 23(a)(3) is satisfied. *See Netbank*, 259 F.R.D. at 665-66.

### 4.   The Proposed Class Representative Will Fairly and Adequately Protect the Interests of the Settlement Class

Under Rule 23(a)(4), the representative party in a class action must "adequately protect the interests of those he purports to represent." *Valley Drug Co. v. Geneva Pharms., Inc.*, 350 F.3d 1181, 1189 (11th Cir. 2003).  To satisfy this requirement, Plaintiff must show (a) that his interests are not antagonistic to those of the other members of the proposed Settlement Class; and (b) that his attorneys are qualified, experienced and able to conduct the litigation.  *See Kirkpatrick v. J.C. Bradford & Co.*, 827 F.2d 718, 726 (11th Cir. 1987); *In re Theragenics Corp. Sec. Litig.*, 205 F.R.D. 687, 695-96 (N.D. Ga. 2007).

Plaintiff's interests in this case are directly aligned with those of the other members of the proposed Settlement Class.  Plaintiff claims that he suffers damages from the same alleged conduct as the other members of the class, and through those claims seek the same recovery from Defendants.  In addition, Plaintiff has been actively involved in the Action since its inception, regularly conferring with counsel, responding to discovery requests, and appearing for a deposition.  Accordingly, Plaintiff is a more-than-adequate representative of the Settlement Class.

Plaintiff's counsel is qualified, experienced and able to conduct this litigation.  *See Kirkpatrick*, 827 F.2d at 726; *In re Theragenics*, 205 F.R.D. at 696.

Indeed, Lead and Liaison Counsel are very experienced in successfully handling securities fraud and other complex class action litigation.  In addition, Lead and Liaison Counsel satisfy the elements of Rule 23(g).  They devoted significant effort to identifying and investigating the potential claims in this Action, conducting interviews with many former employees of Ebix, its customers and others, and reviewing documents.  In addition, Lead and Liaison Counsel researched and drafted several complaints, including the CAC, and vigorously litigated Defendants' Motion to Dismiss and Motion for Judgment on the Pleadings, as well as Plaintiff's Motion for Class Certification.  *See* Fed. R. Civ. P. 23(g)(1)(C) (instructing that a court consider the work counsel have done in identifying or investigating potential claims in the action, counsel's experience in handling class actions and other complex litigation, counsel's knowledge of the applicable law and the resources counsel will commit to represent the class).

Because Plaintiff is an adequate representative of the Settlement Class, and because Lead Counsel and Liaison Counsel satisfy Rule 23(g), Plaintiff respectfully requests that this Court appoint Plaintiff as Class Representative and appoint Lead Counsel and Liaison Counsel as Class Counsel.

### B.    The Proposed Settlement Class Satisfies Rule 23(b)(3)

Certification is proper in this case under Rule 23(b)(3), which requires that common questions of law or fact predominate over any questions affecting only

individual members ("predominance"), and that a class action be superior to other available methods for the fair and efficient adjudication of the controversy ("superiority").  *See Netbank*, 259 F.R.D. at 667 ("The key to certification of a class under Rule 23(b)(3) is whether the efficiency and economy of class adjudication outweighs the difficulties and complexity of individual adjudication.") (internal citation and quotation marks omitted).

### 1. Common Questions of Law and Fact Predominate Over Questions Affecting Only Individual Members of the Class

The predominance inquiry "tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation."  *Amchem Prods. v. Windsor*, 521 U.S. 591, 623 (1997).  The Supreme Court has expressly recognized that "[p]redominance is a test readily met in certain cases alleging . . . securities fraud[.]"  *Id.* at 625.  Rule 23(b)(3) requires that "[c]ommon issues of fact and law . . . ha[ve] a direct impact on every class member's effort to establish liability that is more substantial than the impact of individualized issues in resolving the claim or claims of each class member."  *Sacred Heart Health Sys., Inc. v. Humana Military Healthcare Servs., Inc.*, 601 F.3d 1159, 1170 (11th Cir. 2010) (internal quotation marks omitted).

Here, the common questions of law and fact described above predominate over any individual questions.  The same set of operative facts applies to each

Class member (*i.e.*, each Class member purchased and/or acquired Ebix common stock during the Class Period at prices alleged to be artificially inflated as a result of Defendants' false and misleading statements and/or omissions) and each Class member was allegedly harmed when the undisclosed facts came to light. Accordingly, the "predominance" requirement is satisfied.

### 2.    A Class Action Is Superior to Other Methods of Adjudication

This Court has previously noted that the class action mechanism is a superior method of adjudicating securities fraud cases.  *See Scientific-Atlanta*, 571 F. Supp. 2d. at 1343.  The types of federal securities law violations alleged in this Action inflict economic injury on large numbers of geographically dispersed investors, and pursuing individual litigation against well-financed, multiple corporate adversaries is not feasible for most investors.  In addition, "separate actions by each of the class members would be repetitive, wasteful, and an extraordinary burden on the courts."  *Kirkpatrick*, 827 F.2d at 725.

Rule 23(b)(3) outlines four factors the Court should consider in making a determination regarding superiority:  (a) the interest of individual members in controlling the litigation; (b) the extent and nature of litigation already commenced; (c) the desirability of concentrating claims in a particular forum; and (d) the difficulties in management.  All four factors are satisfied in this case.

Prosecution of this lawsuit on a Class basis will be more efficient than adjudication of individual shareholder claims.  Plaintiff and Lead Counsel have invested significant resources thus far in prosecuting the claims asserted in the CAC.  Further, certification is the superior method to facilitate the resolution of the Settlement Class's claims against Defendants.  Absent the certification of the Settlement Class, Defendants would be unable to obtain a Class-wide release, and would have little incentive to enter into the Settlement.  Accordingly, Plaintiff has satisfied the superiority requirement of Rule 23(b)(3) and this Court should certify the proposed Settlement Class.

C.      **The Court Should Appoint Counsel As Class And Liaison Counsel**

"[A] court that certifies a class must appoint class counsel."  Fed. R. Civ. P. 23(g).  Plaintiff respectfully requests that Faruqi and Holzer be appointed Class Counsel and Liaison Class Counsel, respectively, for the Settlement Class.  These firms have (and will continue to) fairly and adequately represented the Settlement Class.  Proposed counsel are knowledgeable about the applicable law, experienced in handling class actions, have performed substantial work in pursuing the claims and in reaching a settlement, and have committed the necessary resources to representing the Settlement Class.  *See* Fed. R. Civ. P. 23(g)(1)(A).

## V.   THE PROPOSED NOTICE PLAN AND FORMS OF NOTICE SHOULD BE APPROVED

The parties have negotiated the form of the Notice and the Summary Notice to notify the Class of the terms of the Settlement, the Class members' rights in connection with the Settlement, and the date of the Settlement Hearing for final approval by the Court, which are attached to the Stipulation as Exhibits A-1 and A-3. The Notice, which will be sent by mail to Class members, has been carefully drafted to comply with the provisions of the PSLRA. *See* 15 U.S.C. §78u-4(a)(7). Lead Counsel believes that because the Notice and Summary Notice fairly apprise Class members of their rights with respect to the Settlement, they represent the best notice practicable under the circumstances and should be approved by the Court.

The parties have agreed to use the traditional methods for notifying the Class members: notification by mail and by publication in a national newspaper focusing on investors.  Upon entry of the Preliminary Approval Order, the claims administrator will mail the Notice and Proof of Claim forms to Settlement Class members who can be identified from stock transfer records.  Lead Counsel will cause the Summary Notice to be published in the national edition of *Investor's Business Daily* and posted on *PR Newswire*.  In addition, the Stipulation and its exhibits will be posted on the claims administrator's website.

The manner of providing notice, i.e., individual notice by mail to all Class members who can be reasonably identified and additional publication notice, represents the best notice practicable under the circumstances, and satisfies the requirements of due process and Rule 23. *See, e.g., In re Domestic Air Trans.*, 141 F.R.D. at 550-51 (providing that notice by mail to those class members who could be identified and by publication only to those who could not be identified satisfies due process requirements); *In re Checking Account Overdraft*, 275 F.R.D. at 662. This Court should find the Notice and procedures for its dissemination are reasonably calculated to provide notice of the Settlement to Class members.

## VI.    PROPOSED SCHEDULE

As outlined in the proposed Preliminary Approval Order submitted herewith, no later than 31 days after entry of the Preliminary Approval Order, the Claims Administrator will notify Class members of the Settlement by mailing a copy of the Settlement Notice and Proof of Claim Form, substantially similar to the forms attached as Exhibits A-1 and A-2 to the Stipulation, respectively, to each Person identified in connection with the dissemination of the Class Notice, and to post a copy of the Summary Notice on the website established for the Action. Then, not later than 40 days after entry of the Preliminary Approval Order, the Summary Notice shall be published once in the national editions of *Investor's Business Daily* and posted on *PR Newswire.*

23

In connection with preliminary approval of the Settlement, the Court must set a final approval hearing date, dates for mailing and publication of the Notice and Summary Notice, and deadlines for submitting claims or for objecting to the settlement.  The Parties respectfully propose the following schedule for the Court's consideration:

| Event | Time for Compliance |
|---|---|
| Deadline for mailing the Notice to Class Members and Posting On Website ("Notice Date") | 31 days after entry of the Preliminary Approval Order |
| Deadline for publishing Summary Notice | 40 days after entry of the Preliminary Approval Order |
| Filing of briefs in support of final approval of Settlement, Plan of Allocation, and Lead Counsel's fee and expense request | 44 days before the Settlement Hearing |
| Receipt deadline for Objections and Exclusions | 30 days before the Settlement Hearing |
| Filing of reply memoranda in response to any objections | 7 days before the Settlement Hearing |
| Settlement Hearing | The week of _____, 2014, or at the Court's earliest convenience thereafter |
| Deadline for submitting Proofs of Claim | 90 days after the Notice Date |

## VII.  CONCLUSION

For the reasons stated above, Plaintiff respectfully requests that this Court (1) preliminarily approve the proposed Settlement and schedule a final approval hearing; (2) preliminarily certify the proposed Settlement Class and its

representatives; and (3) approve the proposed forms of Notice and the proposed

Notice plan.

Dated: January 27, 2014                    Respectfully submitted,

                                           **HOLZER & HOLZER, LLC**

                                           /s/ Marshall Dees
                                           MARSHALL DEES
                                           Georgia Bar Number: 364698
                                           Marshall P. Dees
                                           Georgia Bar Number: 105776
                                           200 Ashford Center North, Suite 300
                                           Atlanta, Georgia  30338
                                           Telephone: 770-392-0090
                                           Facsimile: 770-392-0029

                                           **FARUQI & FARUQI, LLP**
                                           Richard Gonnello
                                           369 Lexington Avenue, 10th Floor
                                           New York, New York 10017
                                           Telephone: 212-983-9330
                                           Facsimile: 212-983-9331

                                           ***Attorneys for Lead Plaintiff***

## <u>CERTIFICATE OF SERVICE AND TYPE</u>

Pursuant to Local Rule 7.1(D), the undersigned counsel for Dan Anghel hereby certifies that the foregoing Plaintiff's Memorandum of Law in Support of Unopposed Motion for Preliminary Approval of Class Action Settlement, Preliminary Certification of Settlement Class, Approval of Class Notice, and Scheduling of a Final Approval Hearing has been prepared with a font size and point selection (Times New Roman, 14 pt.) which was approved by the Court, and that on this 27th day of January, 2014, the foregoing was electronically filed with the Clerk of Court using the CM/ECF system which will automatically send email notification to all counsel of record who have appeared in this matter.

/s/ Marshall Dees
MARSHALL DEES